## S. J. LIPSCOMB v. J. W. PARKER.

### No. 554.

**Deposit.**—See facts held sufficient to support a judgment for money deposited by plaintiff with the defendant. The defense was that the money was deposited with the defendant as agent for a co-operative association, as a general deposit, and that the association had authority to use the money, and did use it, and that it alone was liable.

APPEAL from the County Court of Robertson. Tried below before Hon. O. D. CANNON.

*Simmons & Crawford*, for appellant.— 1. Every deposit is general, unless the depositor makes it special, or deposits it in some particular capacity. Keene v. Collier, 1 Metc., 415; Ward v. Johnson, 95 Ill., 115.

The nature of the deposit may be gathered from the kind of certificate given the depositor. Foster v. Bank, 17 Mass., 479; Wallace v. State Bank, 7 Ark., 61.

Every general deposit is a loan. Taylor v. Taylor, 78 Ky., 470.

In a general deposit of money the depositor has no right to the particular money deposited, as in the case of a special deposit. Lilly v. Commissioners, 69 N. C., 300; Ruffin v. Commissioners, 69 N. C., 498.

In a general deposit, the same amount, or any part thereof, is to be refunded on demand.  Marine Bank v. Fulton Bank, 2 Wall., 252; Ward v. Johnson, 95 Ill., 215.

The title to the money in a general deposit is immediately vested in and becomes the property of the bank.  Cragie v. Hadley, 99 N. Y., 131; Bank v. Lloyd, 99 N. Y., 530.

But money deposited in a sealed packet, bag, box, or the like, is presumed to be a special deposit.  Dawson v. Bank, 5 Ark., 283.

And it would be a breach of trust in the bank or its officers to open such packet or inspect its contents.  Foster v. Bank, 17 Mass., 479.

Even a deposit in a bank under an order of the court is not a special deposit where the money is not kept separate from other deposits.  Otis v. Gross, 96 Ill., 612.

2.  The relation between the association and appellee, as to this deposit, is that of debtor and creditor.  Baker v. Kennedy, 53 Texas, 205; Jackusch v. Tawsey, 51 Texas, 133; Libby v. Hopkins, 104 U. S., 303; Bank v. Risley, 111 U. S., 125; Ward v. Johnson, 5 Ill. App., 30; Knecht v. Savings Institution, 2 Mo. App., 563; People v. Savings Institution, 92 N. Y., 7; Foley v. Hill, 2 H. L. Cases, 28; Bank v. Bank, 46 N. Y. (1 Sick.), 82; Bayden v. Bank, 65 N. C., 13; Allen v. Bank, 5 Jones & Sp., 137; Buchanan & Co. v. Woodman, 1 Hun, 639.

*James D. Gann*, for appellee, cited 1 W. & W. C. C., secs. 197, 945; Sydnor & Bone v. Hurd, 8 Texas, 98; Geddens v. Byers, 12 Texas, 83.

FISHER, Chief Justice.—Appellee, Parker, recovered a judgment against the appellant, Lipscomb, for the sum of $196.62.  The assignments of error attack this judgment because the evidence did not warrant it.

The appellee's case consists of a deposit made by him with appellant, Lipscomb, of a sum of money, to be held by Lipscomb subject to the call of appellee.

Appellant denies this in part, and says, that the money left with him by the appellee was not deposited with him personally, but was left with him simply as agent for the Franklin Co-operative Association, as a general deposit, and that the association had authority to use the money, and it was used by the association, and that it, and not the appellant, is liable to appellee.

The evidence in the record coming from the appellee is as follows:

"I am the plaintiff in this case.  I knew S. J. Lipscomb, the defendant, in 1889, and for some years prior thereto.  Mr. Lipscomb was manager of the Franklin Co-operative Association, doing business in Franklin.  Sometime in the fall of 1888 or spring of 1889 I left with Mr. Lipscomb for safe keeping a note for $250.  When it matured it had accumulated

$25, making in all $275. The note was made payable to me as guardian for my minor children. Their names were all mentioned in the body of the note. I was guardian of my minor children, appointed by the County Court of Robertson County, and the note above mentioned was given by Tobe Johnson, of Fort Worth, Texas, in part payment of the purchase money of a tract of land that I had sold him, as guardian of the estate of my minor children. I had sold the land for $800, had received $300 cash, and two notes for $250 each, payable in one and two years, with 10 per cent interest. I paid out the $300 to the heirs who were of age, and took their receipts, and I turned the notes and receipts over to S. J. Lipscomb, to be put in his iron safe for safe keeping, because I had confidence in him, and he was my bondsman. When I collected the first note I paid it out to two of the heirs who had become of age, and took their receipts, and to the older heirs, and took their receipts, and had Lipscomb place them with the other papers.

"When the second note became due, I called on S. J. Lipscomb for it, and he told me he had already sent it off for collection. I thought strange of this, as I had not authorized him to sign my name, and next time I came to town he told me the money had come and he had placed it in Decherd's bank. I told him to get it, as I wished to pay Mr. Moore, one of the heirs. He went and got the money and handed me $108, the amount then due the heirs, and told me, as Mr. Moore was indebted to the association, that he preferred I would settle with him somewhere else, as, if he was settled with there, it might look like it was done with the purpose to collect the debt. I took the money, and went to Mr. Kellogg's and paid Mr. Moore $33, his share, and took his receipt. I left the balance of $167 with Mr. Lipscomb in the safe. I did not want to take the money home with me, and so left it with him for safe keeping, and told him to give me a receipt for it, which he did. (Receipt was here exhibited to witness.) That is the receipt Mr. Lipscomb gave to me, and it shows Mr. Lipscomb collected $275 and paid me $108, and that at the date of the receipt he owed me $167 on this deposit, and he owes me this $167 now. I have frequently asked him for this money, and he always told me he would see that I got it. I might have asked him for this money one or two months after the date of the receipt. I am not certain as to the time. I did not place this note with Mr. Lipscomb to be used in the business of the association, neither did I authorize Mr. Lipscomb to collect the note, and when I left the money with him it was for safe keeping, he being my bondsman, and not to be used in the business. Lipscomb knew that this money belonged to minor children, and that I had no authority to lend it. Sometime in January, 1889, I had assisted the association, and turned over to Mr. Lipscomb $50 in cash to be used in the business, and I also turned over to him a note on John Drennan for $201.90. I let him (Mr. Lipscomb) have the Drennan note to put in

the bank as collateral to borrow money to be used in the business. I told Lipscomb then not to cash that note, but to place it as collateral, but as soon as I had endorsed said note and delivered it to him, he cashed it. He gave me a receipt for the Drennan note.

" Plaintiff here read in evidence the receipt of the Drennan note, which was as follows:

"Received of J. W. Parker $50 cash and one note on J. H. Drennan, of Calvert, for $325.50, interest 10 per cent from February 14, 1888, due January 1, 1889, with credit on back $123.10, balance $201.90; for deposit.
" S. J. LIPSCOMB, Agent F. C. A.

" I simply left the money with Mr. Lipscomb. Don't know whether you call it a general or special deposit. I left it there for safe keeping, and told him to give me a receipt, which he did. I did not read the receipt, because my eyes were bad, and I had not read a receipt for ten years on account of my eyes, and, in addition, I then had confidence in Lipscomb. Mr. Lipscomb had no authority from me to use the money. It was to be paid back to me whenever I demanded it. I do not know when I first demanded it. It might have been one month or two months after I left it there, or it might have been longer. I know I demanded it in April, 1890, when the association suspended. He always told me that he would see that I got it. He told me, that when crowded by creditors he always went to the safe and got any money he found there. I did not care what money I got back, so I got good money back. I am a stockholder in the Franklin Co-operative Association, and in 1889 and 1890 was also one of the directors. I do not know whether the association is solvent or not; there are enough good claims on the books if when collected to pay all the debts. The bulk of the stockholders are solvent men, but they are only bound to the amount of their stock, and they will lose all their stock. Mr. Lipscomb had no authority from the board of directors to receive money on deposit and issue deposit slips, nor to negotiate and hypothecate notes as manager of the Franklin Co-operative Association, and if he used the money that I left there in paying the debts of the association, he acted without any authority. I did not read the receipt; my eyes were bad, and I had confidence in Lipscomb, and had not read a receipt for ten years. I have known Mr. Lipscomb a long time, and had the utmost confidence in him up to that time. Mr. Lipscomb gave me the receipt on June 4, 1889, and it was on that day that I settled with Mr. Moore.

" Plaintiff next read in evidence the deposit slip, to-wit:

" Received, Franklin, Texas, May 10, 1889, of J. W. Parker, the sum of $275 on deposit, less $33 paid J. M. Moore, $75 paid J. W. Parker for heirs, total paid $108; balance due to this date, $167. June 4, 1889.
[Signed] " S. J. LIPSCOMB, Agent F. C. A.

" The $201.40 note S. J. Lipscomb testified about in his deposition is a different note entirely from the $250 note given to me as guardian for my minor children. The note he testifies about in his deposition is the Drennan note for $201.40. I let him have it to use in the business. I also let him have another $50 note and $50 cash to be used in the business. At the time I left the $167 with him on deposit, the store owed me, and, I suppose, owes me yet. I have never been able to get a settlement with them. This $167 was never placed to my credit on the books. I also put in the store four 55-gallon barrels of syrup, for which I have never had any credit. As I stated before, I just left this $167 with S. J. Lipscomb in the iron safe for safe keeping, as I preferred not to carry it home. S. J. Lipscomb was on my bond as guardian, and knew that the $167 belonged to my wards, and that he had no right to use it any way, and I had no idea at that time that he would use it.

" G. R. Dunn testified, for plaintiff: I am an expert bookkeeper; have had considerable experience in keeping books. I examined the ledger of the Franklin Co-operative Association to see whether J. W. Parker was ever given credit for the $167 left on deposit with S. J. Lipscomb, and found he was not given credit with the $167; but he was given credit with the $201.40 Drennan note. I consider the ledger the proper place to look for this credit. The ledger was loosely kept. I did not examine any other books. I considered the ledger the proper place to look for this entry. I examined said J. W. Parker's account carefully, and he is not credited with the $167."

This testimony, in most of its material features, is contradicted by the evidence of the appellant.

The trial court had the right to determine the credibility of the witnesses and the weight that should be given to their testimony. It has resolved this right in favor of giving credence to the case made by the evidence of appellee; and in view of this fact we can not disturb that judgment, as we think the evidence of Parker amply sustains it. If he is to be believed, the appellant was personally liable for the amount received.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered November 22, 1893.